FEDERAL LAND BANK of St. Louis, a Corporation, v. J. W. MCCOLGAN, DELLA P. MCCOLGAN and REBA MCCOLGAN, Appellants, DEXTER NATIONAL FARM AND LOAN ASSOCIATION, Defendant.—59 S. W. (2d) 1052.

Division Two, April 20, 1933.

George *Munger* and *M. G. Gresham* for appellants.

862

*C. S. Hale, Lovell George* and *Ray B. Lucas* for respondent.

FITZSIMMONS, C.—Appellants, J. W. McColgan, Della Mc-Colgan, his wife and Reba McColgan appeal from a decree of the Circuit Court of Mississippi County, reforming the description of land in a mortgage and granting foreclosure. The debt secured was for the principal sum of $10,000 and at the time of the decree amounted with interest and other items to $15,250.72. The land involved is in Stoddard County, Missouri, from which county the cause went on change of venue to Mississippi County. The appeal was allowed to the Springfield Court of Appeals which court, for want of jurisdiction, transferred the cause to the Supreme Court.

The farm mortgage in suit was executed by J. W. McColgan and Della P. McColgan, his wife, to respondent, Federal Land Bank of St. Louis, to secure the payment of a certain promissory note executed by the mortgagors to the mortgagee in the principal sum of $10,000, payable in sixty-six equal semi-annual installments, of which sixty-five were for $350 each and the last was for $291.86 maturing on August 1, 1954. The mortgage was dated February 1, 1922, and was recorded in Stoddard County February 15, 1922. The note was of even date with the mortgage. The first count of the petition was for reformation of the description which was given in the

mortgage as follows: "The west half ($\frac{1}{2}$) of the northeast quarter ($\frac{1}{4}$) and all of the southeast quarter ($\frac{1}{4}$) of section twenty (20), in township twenty-six (26) north, of range twelve (12) *west* of the Fifth Principal Meridian, and all of the northeast quarter ($\frac{1}{4}$) of section twenty-nine (29), in township twenty-six (26) north, of range twelve (12), *west* of the Fifth Principal Meridian; containing a total of four hundred (400) acres, more or less, situated in Stoddard County, Missouri." The mistake, which the petition charged to be mutual, was in the use of the word "west" after range 12. It was admitted at the trial that all of Stoddard County lies *east* of the Fifth Principal Meridian. Reba McColgan was joined as a defendant because, as respondent alleged in the first count, defendant, J. W. McColgan, executed and delivered to her on August 29, 1925, a quitclaim deed to the land actually mortgaged to respondent, that Reba was the daughter of J. W. McColgan, that the conveyance to her was without consideration and in the nature of a gift, that she had actual and imputed knowledge and constructive notice of her father's indebtedness to respondent and of the execution by him of the mortgage which he then believed to convey the identical land described in the quitclaim deed. Reformation of the description in the mortgage as against Reba McColgan as well as against the mortgagors was prayed.

The second count of the petition, which was for the foreclosure of the interest of all defendants in the land actually mortgaged, alleged that the note and the mortgage provided that, upon default in the payment of any installment, the loan in its entirety, should, at the option of the payee, become immediately due and payable and bear eight per cent interest, and that, in the event of the failure of the mortgagors to pay any interest, taxes, liens, or assessments against the land or insurance premiums on the buildings, when due, the mortgage gave to respondent the like right and option to declare the entire debt due and payable. The second count further alleged that the mortgagors failed to pay state, county and drainage taxes against the land and insurance premiums, all of which respondent paid. While the petition did not allege what were the delinquencies in the installment payments on the $10,000 loan, it prayed judgment for $10,449.68 as principal and interest to September 1, 1929, and for the moneys expended by respondent for taxes, insurance and extension of abstract, and for interest on those items.

Appellants, McColgan, answering jointly, admitted the execution of the note, the mortgage and the quitclaim deed and denied all other allegations. They also pleaded that the mistake, if any, in the description in the mortgage was not the mutual mistake of plaintiff and of any defendants, but was the mistake only of plaintiff who drafted the instrument. They further answered that the

quitclaim deed to Reba McColgan was executed and received without any notice to her or knowledge on her part that the land was incumbered; that the land was not incumbered or intended to be incumbered; that the quitclaim deed to Reba was based upon a valuable and also upon a good, consideration.

Judgment went by default against defendant, the Dexter National Farm Loan Association, which was sued as an indorser and guarantor of the note secured by the mortgage. Only the respondent offered evidence. Appellants McColgan put in no proof. The decree, entered March 30, 1931, reformed the description of the mortgage as to all defendants, found the principal and interest of the debt to be $11,654.88; and taxes paid by respondent with interest thereon $3,595.84; amounting to $15,250.72, for which judgment was given with special execution against the land, with deficiency, if any, to be levied against McColgan and wife and the Dexter National Farm Loan Association. Facts in evidence will be stated in connection with the examination of appellant's assignments of error.

 I. Appellants complain that the trial court erred in denying the demand of appellant Reba McColgan for a jury trial of the issue of notice to her of respondent's recorded mortgage. If the issues joined entitle the parties to an ordinary judgment at law then under the Constitution and the laws of the State the parties are entitled to a trial by jury. But if the issues tendered are equitable in their nature and call for equitable relief, then the cause is triable before the chancellor. [Lee v. Conran, 213 Mo. 404, 111 S. W. 1151; l. c. 1153.] The reformation of a deed is of equitable cognizance and is triable before the court. Long v. Long, 141 Mo. 352, 44 S. W. 341; Schwickerath v. Cooksey, 53 Mo. 75, l. c. 80, where this court said: "There can exist no doubt as to the power of a court of equity to correct mistakes in instruments and to reform conveyances, so as to make them speak the language originally intended." The issue of notice affected Reba McColgan's interest in the land under the reformation count of the petition. If the decree of the court had sustained her defense to the first count it could not have affected her rights adversely under the second or foreclosure count. But the decree having found against her on the first count and having adjudged that her interest in the land was subject to the mortgage, only a court of equity could go further and foreclosure her equity of redemption. This court has held that courts of equity have not been shorn of their jurisdiction to foreclose mortgages by reason of statutory provisions. [Brim v. Fleming, 135 Mo. 597, 37 S. W. 501.] And under the authority of that case the second count of the petition before us is of equitable cognizance even as is the first count. The authorities cited by appellants in support of their demand for a jury trial of the particular issue mentioned pass upon actions at law

and are not in point. This assignment of error therefore is ruled against appellants.

II. Appellants allege that there was a failure of proof of actual and imputed knowledge on the part of Reba McColgan that her father, at the time of the execution of the quitclaim deed, was indebted to respondent and that he had executed the mortgage in suit as security therefor. Therefore, they contend, the decree should have been in favor of the appellant, Reba. Respondent also alleged in its petition constructive notice arising out of the recording of the mortgage in Stoddard County in 1922. If under the facts of this case the recording of the mortgage in 1922 imparted notice to Reba at the time of the execution of the quitclaim deed to her in 1925, and if actual notice was not necessary to subject her interest in the land to the mortgage, the assignment of error is without merit. If the law is otherwise, the assignment is well taken. We address ourselves to the character of notice required.

Let it be remembered that the farm mortgage described the land as consisting of 400 acres located in Stoddard County, Missouri, and being certain parts of Sections 20 and 29 in township 26, range 12 *west*. The mistake was in the use of the word ''west,'' after the range number. Every instrument in writing that conveys or affects any real estate in law or in equity acknowledged in the manner prescribed by statute and recorded in the county in which the real estate is located, ''shall, from the time of filing the same with the recorder for record, import notice to all persons of the contents thereof and all subsequent purchasers and mortgagees shall be deemed, in law and in equity, to purchase with notice.'' [Sec. 3040, Mo. Stat. Ann. 1929, Vol. 3, p. 1880.] Appellants including Reba McColgan, admit in their answer that J. W. McColgan and Della P. McColgan executed the promissory note and the mortgage to respondent and the quitclaim deed to appellant Reba McColgan. And the respondent pleaded the mortgage as an instrument recorded according to the statute. The record of the mortgage therefore was constructive notice to Reba McColgan and was sufficient unless the mistake in the description deprived the instrument and its holder of the benefit of the statute.

It has been ruled by this court that if the description in a deed is void for uncertainty its record does not impart notice. Gatewood v. House, 65 Mo. 663, where it was held that a description in a deed of the land conveyed by mere reference to a certificate of entry at a United States land office, which certificate embraces large bodies of land and is not recorded, without even designating the land as lying in the county where the deed is recorded is not a sufficient description. Cass County v. Oldham, 75 Mo. 50, where the description in a mortgage designated the land by quarter sections but made

no mention of township or range. Ozark Land & Lumber Co. v. Franks, 156 Mo. 673, 57 S. W. 540, where a description in a deed omitted the township in which the lands lay. And if the description of land in a deed omits mention of the township and range parol evidence is not admissible to cure the ambiguity (Mudd v. Dillon, 166 Mo. 110, 65 S. W. 973). In these cases only the parties to the conveyance and those having actual knowledge were bound.

But we have also held that where there is a false call, demonstration or description in a deed, and the false description can be rejected and leave a sufficient description to identify the land, the false description will be rejected and the remainder of the description, being sufficiently certain, will be sufficient to pass the land. Shewalter v. Pirner, 55 Mo. 218, l. c. 232, where a lot was described in a deed as fronting on Pine Street in Lexington, Missouri, whereas it fronted on Cedar Street. But with the statement of frontage on Pine Street, omitted, we held that enough remained in the description to identify the lot. Cooley v. Warren, 53 Mo. 166, the Supreme Court said (l. c. 168): ''The first or starting point was surely a mistake, but all the rest of the description was by natural objects, and fixed and permanent monuments, so as to leave no doubt whatever as to the true location. Strike out the first or inconsistent call, and enough still remains to designate the land with certainty. The rule is clearly established, that whenever natural or permanent objects are embraced in the calls of a survey or deed, these have absolute control, and that a call may be rejected for inconsistency or repugnancy, where description enough still remains to ascertain and describe the land with certainty. [Brown v. Huger, 21 How. 306; Fenwick v. Gill, 38 Mo. 510; Rutherford v. Tracy, 48 Mo. 325; 2 Greenl. Cruis. Real Prop. 307 u. 1.]'' Bray v. Adams, 114 Mo. 486, 21 S. W. 853, applies the same rule. There is a clear line of distinction between the cases in which an essential element of description is absent and those in which a false element is found in the description but may be omitted and leave a sufficient, correct and certain description. Recorded instruments containing a mistake which may be corrected by elimination should put prudent persons upon inquiry and should be notice under the statute.

■■■ If in the instant case we should eliminate from the mortgage description the false word ''west'' after the words ''range 12,'' we would have a good description without the necessity of substituting or inserting the word ''east,'' because the names of the county and state appear in the mortgage and are part of the description. The word ''east'' or ''west'' after the range number may be omitted from a description without creating uncertainty if the instrument shows in what county and state the land is situated, and if the county is not one through which a Meridian passes. [Gill on Missouri Titles

(3 Ed.) sec. 143.] This court takes judicial notice of land descriptions in the government surveys and of the political subdivisions of the State. [Myher v. Myher, 224 Mo. 631; 123 S. W. 805.] We know that the Fifth Principal Meridian runs north and south many miles west of Stoddard County, Missouri. It was admitted at the trial that all lands in Stoddard County are east of the Fifth Meridian. Upon the knowledge that we judicially have, we know that a certain tract of land described as containing 400 acres and being in Stoddard County, Missouri, and being parts of Sections 20 and 29, and in township 26, range 12, is in fact in Stoddard County. The word "east" after range 12 is not a necessary part of the description. In the written application that appellant J. W. McColgan made to respondent for the loan which respondent subsequently made and caused to be secured by the mortgage in suit, the land was described as it was in the mortgage, except that neither the word "east" nor the word "west" was used after the words "range 12." That was a good description. In this view of the law and the facts applicable to this case we are of opinion that the description in the mortgage was not void for uncertainty and that Reba McColgan, when she received from her father a quitclaim deed to the land in 1925, was charged with notice under the statute of the mortgage held by respondent, recorded in 1922.

 III. Appellants complain that there was a failure of proof of the mutuality of the mistake in the description in the mortgage. Respondent put in evidence McColgan's application for the loan, which application, as we have seen, described the land offered as security as being in range 12 without the words "east" or "west." There was admitted in evidence an appraiser's report, made to respondent by its representative, C. E. Brenton, upon J. W. McColgan's loan application. This report described the land as it was described in McColgan's application, that is to say with the word "west" omitted. Mr. Brenton testified that before he made his appraiser's report he visited McColgan's farm three miles north of Gray's Ridge in Stoddard County. C. E. Junk, who was a local appraiser for the Dexter Farm Loan Association in 1921, testified that he, together with two other appraisers and McColgan, visited the land described in the application and situated north of Gray's Ridge in Stoddard County, for the purpose of appraising it. Mr. McColgan walked over the farm with the appraisers and showed them the boundaries, the fences and fields.

It is true that there was no evidence that either J. W. McColgan or Della McColgan took any part in drafting the mortgage or that the scrivener was the mutual agent of the mortgagors (appellants McColgan and wife) and of the mortgagee (respondent, Federal Land Bank of St. Louis). In fact there was no evidence whatever

as to the making of the mistake except what appeared upon the face of the mortgage when it was offered in evidence. Appellants insist that, in the absence of proof that the scrivener of the mortgage was the agent of all the parties thereto, mutuality of the mistake was not established. This is too narrow a view of the cases which turn upon the want of common agency on the part of the scrivener. It applies to cases in which the deed or mortgage the reformation of which is sought is unambiguous and complete in itself. [Grand Lodge, A. O. U. W. v. Sater, 44 Mo. App. 445, l. c. 453; Dougherty v. Dougherty, 204 Mo. 228, 102 S. W. 1099, and cases cited.] But the agency of the scrivener of the instrument is quite unimportant in cases in which the deed or the mortgage, intended to be the consummation of a contract correctly expressive of the agreement of the parties, fails of its purpose by reason of an ambiguity, latent or patent. If the contract of the parties is established by clear and cogent evidence, as here, and if a deed or mortgage, drawn in pursuance of that contract, by a mistake in the description of the land affected, fails to carry out that contract in all its terms, the mistake is mutual, no matter who drafted the deed or mortgage. In the case of Hood v. Owens (Mo.), 293 S. W. 774, this court reversed a decree reforming a deed. The respondents relied upon Hutsell v. Crewse, 138 Mo. 1, 39 S. W. 449; Crawley v. Crafton, 193 Mo. 421, 91 S. W. 1027, and Partridge v. Partridge, 220 Mo. 321, 119 S. W. 415, 132 Am. St. Rep. 584. But this court in the Hood case distinguished the three cited cases in these words (293 S. W. l. c. 779): "While reformation of a deed was decreed in each of those cases, it conclusively appeared from the evidence therein that the grantor had conveyed, and described in the deed, a tract of land which he did not own, and had omitted from the deed land which he did own; so that it was patent, palpable, and beyond reasonable question that a mistake or misdescription had been made in writing the deed and that the clearly erroneous description was contrary to the manifest intention of the grantor and maker of the deed. In the instant case however, the deed correctly and accurately describes the two platted town lots conveyed thereby."

In the case before us, the contract between the parties consisted of the accepted application of appellant McColgan for the loan. That application, as we have seen, correctly described the land which McColgan intended to have mortgaged as security. The written report of appraisal made by respondent's agent, described the land in the same terms and words that McColgan used in his application. The minds of the contracting parties met in that accurate description, stated in writing by each of them. The mistake in the mortgage was a patent ambiguity. The mortgage itself was not the complete contract of the parties. By reason of the error in description, it was

but an attempt to fulfill the contract previously made. Therefore the mistake was mutual.

No error appearing in the record the judgment of the court below is affirmed. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by FITZSIMMONS, C., is adopted as the opinion of the court. All of the judges concur.